ROGER WENTHE, PLLC
Roger Wenthe
Nevada Bar No. 8920
2831 St. Rose Pkwy. # 200
Henderson, NV 89052
T: 702-971-0541
roger.wenthe@gmail.com
*Local Counsel for Plaintiff*
*(Additional counsel appear on signature page)2*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FREDDIE PEARSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INTOUCHCX SOLUTIONS, INC.,<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiff, FREDDIE PEARSON, individually and on behalf of all others similarly situated, by and through his attorneys BROWN, LLC and ROGER WENTHE, PLLC, hereby bring this Collective and Class Action Complaint against Defendant, INTOUCHCX SOLUTIONS, INC., and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff Freddie Pearson individually and on behalf of all similarly situated persons employed by Defendant InTouchCX Solutions, Inc., arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Nev. Rev. Stat. §§ 608.016, 608.018, and 608.260, and Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16 (collectively "Nevada Wage-and-Hour Laws").

2. Defendant provides customer service outsourcing services to global clients in industries including technology, digital apps and ecosystems, financial services and fintech, games, and healthcare.

3. Plaintiff and the members of the putative collective and class were employed by Defendant as call center agents and were responsible for handling inbound telephone calls from Defendant's clients and customers.

4. The U.S. Department of Labor recognizes that customer support jobs, like those held by Defendant's call center agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert customer support employees to some of the abuses which are prevalent in the industry.

5. One of those abuses, which are at issue in this case, is the employer's refusal to pay call center agents for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

6. More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

7. Defendant failed to pay call center agents for their time spent starting up their computers, logging into required systems and applications, and reviewing work-related e-mails and other information, before their shifts and upon returning from their meal breaks, including time worked in excess of forty (40) hours in a workweek.

8. Additionally, when call center agents were disconnected from their systems and applications due to technical issues, Defendant required them to remain at their computers and attempt to log back in, but refused to pay them for this time (i.e., "Tech Time").

9. Plaintiff seeks unpaid overtime wages and liquidated damages pursuant to the FLSA on behalf of himself and the "FLSA Collective," defined as: *all current and former call*

*center agents who worked for Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment.* See 29 U.S.C. §§ 207(a)(1); 216(b).

10. Plaintiff seeks unpaid minimum, straight-time, and overtime wages and liquidated damages pursuant to the Nevada Wage-and-Hour Laws on behalf of himself and the "Rule 23 Nevada Class," defined as: *all current and former call center agents who worked for Defendant in Nevada at any time within the three years preceding the commencement of this action and the date of judgment.* See N.R.S. §§ 608.016, 608.018.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

12. This Court has supplemental jurisdiction over the Nevada state law claims pursuant to 28 U.S.C. § 1367 because they are part of the same case and controversy as Plaintiff's federal claim.

13. The Court has personal jurisdiction over Defendant because it is headquartered in Nevada and because Plaintiff worked for Defendant in Nevada.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in Nevada and because Plaintiff worked for Defendant in Nevada.

## PARTIES

15. Plaintiff Freddie Pearson is a resident of Las Vegas, Nevada, and worked for Defendant remotely from home in Las Vegas, Nevada as a call center agent from on or about March 28, 2023, to on or about April 18, 2023. His job title was "Customer Service Representative," and his rate of pay was $16.00 per hour. Plaintiff signed a consent form to join this lawsuit. *See* **Exhibit 1**.

16. Defendant INTOUCHCX SOLUTIONS, INC. is a Nevada corporation whose principal address is 701 S Carson Street, Suite 200, Carson City, Nevada, 89701.

**GENERAL ALLEGATIONS**

17. Defendant employed call center agents to handle inbound telephone calls from Defendant's clients and customers.

18. Defendant classified call center agents as non-exempt employees and paid them on an hourly basis without any guaranteed, predetermined amount of pay per week.

19. At all times relevant to this action, Defendant was an enterprise whose annual gross volume of sales made or business done exceeded $500,000.

20. At all times relevant to this action, Defendant was an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

21. Call center agents were engaged in commerce, and thus subject to individual coverage under the FLSA.

22. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

23. Call center agents were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

24. Defendant "suffered or permitted" call center agents to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

25. In order to perform their jobs, call center agents were required to start up and log in to various computer systems and applications that were necessary for them to retrieve and process information during calls.

26. Call center agents performed these activities before their shifts and/or upon returning from their meal breaks.

27. However, call center agents were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete, meaning that they performed work for which they were not compensated.

28. Additionally, when call center agents were disconnected from their systems and applications due to technical issues, Defendant required them to remain at their computers and attempt to log back in, but refused to pay them for this time (i.e., "Tech Time").

29. The off-the-clock time call center agents spent starting up and logging into required systems and applications directly benefited Defendant.

30. This start-up/log-in process was an essential part of call center agents' job responsibilities.

31. At all relevant times, Defendant controlled call center agents' work schedule, duties, protocols, applications, assignments and employment conditions.

32. Despite knowing that Plaintiff and other call center agents performed start-up/log-in activities before their shifts and during periods of "Tech Time," Defendant and its managers did not make any effort to stop or otherwise disallow this off-the-clock work and instead allowed and permitted it to happen.

33. Defendant possesses, controls and/or has access to information and electronic data that shows the times call center agents started up and logged into their computer systems and applications each day and the time they logged into their telephone systems.

34. Defendant was able to track the amount of time that call center agents spent in connection with start-up/log-in activities; however, Defendant failed to pay call center agents for such time.

35. Defendant used its adherence and attendance policies against call center agents by disciplining call center agents if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

36. These policies coerced call center agents into beginning the process of starting up and logging into their computers systems and applications, and reading company e-mails and instructions prior to their start of their scheduled shift time.

37. Defendant's policies and practices deprived call center agents of wages owed for the start-up/log-in activities described above.

38. Because call center agents often worked in excess of forty (40) hours in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

39. Plaintiff regularly worked in excess of forty (40) hours in a workweek and was not paid for all hours worked in such weeks as a result of the violations alleged herein.

40. For example, Plaintiff worked in excess of forty (40) hours in the workweek beginning April 17, 2023, and was not paid for all hours worked in such week as a result of the violations alleged herein.

41. Defendant is a leader in its field, employs hundreds of call center agents, and knew or should have known that call center agents' time spent in connection with the preliminary start-up/log-in process is compensable under the FLSA and Nevada Wage-and-Hour Laws.

## COLLECTIVE ACTION ALLEGATIONS

42. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of the FLSA Collective, defined as:

> *All current and former call center agents who worked for Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

43. Plaintiff reserves the right to amend this definition as necessary.

44. Excluded from the proposed Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside salespersons.

45. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the putative members of the FLSA Collective are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b) because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

46. The employment relationships between Defendant and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – whether

Defendant failed to pay call center agents for preliminary start-up/log-in time and whether such time is compensable – do not vary substantially among the FLSA Collective members.

47. Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include over one thousand members. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NEVADA CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of the Rule 23 Nevada Class, defined as:

> *All current and former call center agents who worked for Defendant in Nevada at any time within the three years preceding the commencement of this action and the date of judgment.*

49. Plaintiff reserves the right to amend this definition as necessary.

50. The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

51. There is a well-defined community of interest among Rule 23 Nevada Class members, and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether the time Rule 23 Nevada Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time; and

   b. Whether Rule 23 Nevada Class members are owed minimum, straight-time, and/or overtime wages for time spent performing start-up/log-in activities, and if so, the appropriate amount thereof.

7
COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

52. Plaintiff's claims are typical of those of the Rule 23 Nevada Class in that he and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

53. Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and he has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel has interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

55. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

56. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

57. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

# COUNT I

## (Brought Individually and as a Collective Action Under 29 U.S.C. § 216(b))

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207(a)(1)

## FAILURE TO PAY OVERTIME WAGES

58. Plaintiff re-alleges and incorporates all previous paragraphs herein.

59. At all times relevant to this action, Defendant was an enterprise whose annual gross volume of sales made or business done exceeded $500,000.

60. At all times relevant to this action, Defendant was an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

61. In addition, Plaintiff and the FLSA Collective members were themselves engaged in commerce, and thus subject to individual coverage under the FLSA.

62. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

63. Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

64. Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

65. Defendant required Plaintiff and the FLSA Collective members to perform start-up/log-in activities before and during their shifts but failed to pay these employees the federally mandated overtime compensation for all time worked.

66. Additionally, when Plaintiff and the FLSA Collective members were disconnected from their systems and applications due to technical issues, Defendant required them to remain at their computers and attempt to log back in, but refused to pay them for this time.

67. The start-up/log-in activities performed by Plaintiff and the FLSA Collective members every session are an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

68. In workweeks in which Plaintiff and the FLSA Collective members worked in excess of 40 hours, the uncompensated start-up/log-in time should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

69. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its call center agents to perform start-up/log-in activities and Defendant could have properly compensated Plaintiffs and the FLSA Collective members for such time, but did not.

70. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

**(Brought Individually and as a Class Action Under Fed. R. Civ. P. 23)**

**VIOLATIONS OF NEVADA WAGE-AND-HOUR LAWS**

**FAILURE TO PAY MINIMUM, STRAIGHT-TIME, AND OVERTIME WAGES**

71. Plaintiff re-alleges and incorporates all previous paragraphs herein.

72. All members of the Rule 23 Nevada Class are entitled to their regular wages and/or overtime pursuant to Nevada Wage-and-Hour Laws.

73. Defendant was an "employer" and Plaintiff and the Rule 23 Nevada Class members were "employees" for the purposes of Nevada Wage-and-Hour Laws.

74. N.R.S. § 608.016 states that an "employer shall pay to the employee wages for each hour the employee works."

75. N.R.S. § 608.018 states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or

eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages.

76. N.R.S. § 608.260 allows employees to "bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage."

77. N.R.S. § 608.140 provides employees with a private right of action to recover wages owed under N.R.S. §§ 608.016 and 608.018. *See Neville v. Eighth Judicial Dist. Court of Nev.*, 406 P.3d 499 (Nev. 2017).

78. Nevada's Minimum Wage Amendment, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

79. By failing to pay Plaintiff and members of the Rule 23 Nevada Class for all of the time they worked (including a payment equal to 1.5 times their ordinary wage on that time), including the time they worked in connection with the start-up/log-in process, Defendant violated Nevada Wage-and-Hour Laws.

80. Defendant's violations of N.R.S. §§ 608.016, 608.018, and 608.260 were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

81. Defendant's actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiffs and the Rule 23 Nevada Class to punitive damages.

82. Defendant violated Nevada Wage-and-Hour Laws by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint. As a result, Plaintiff and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. §§ 608.005 *et seq.*

## RELIEF REQUESTED

WHEREFORE, Plaintiff FREDDIE PEARSON requests an entry of an Order granting the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Nevada Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA collective action Class and the Rule 23 Nevada Class, and undersigned counsel as Class counsel for the same;

e. Finding that Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Finding that Defendant violated Nevada Wage-and-Hour Laws and that said violations were intentional, willfully oppressive, fraudulent and malicious;

g. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Nevada Class the full amount of compensatory damages and liquidated damages available by law;

h. Assessing punitive damages against Defendant in an amount sufficient to punish and deter Defendant from engaging in any such conduct in the future and as an example to other employers;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, FREDDIE PEARSON, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal

Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED November 16, 2023

**ROGER WENTHE, PLLC**

By:   */s/ Roger Wenthe*
Roger Wenthe
Nevada Bar No. 8920
2831 St. Rose Pkwy. # 200
Henderson, NV 89052
T: 702-971-0541
Roger.wenthe@gmail.com

*Local Counsel for Plaintiff*

Nicholas Conlon (PHV)
Edmund C. Celiesius (PHV)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (201) 630-0000
nicholasconlon@jtblawgroup.com
ed.celiesius@jtblawgroup.com

*Lead Counsel for Plaintiff*

COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND